# Reeser's Appeal.

1. A. owned two farms of about equal value. In 1867 he conveyed one of them to his son B., taking a mortgage for $12,000, the value of the farm in excess of that amount being considered as an advancement to B. Subsequently A. and B. had various business transactions, and in 1874 met in the office of counsel for the purpose of closing these transactions and equalizing A.'s advancements to B. and his daughter C. Accounts were prepared, the details whereof were lost, and in pursuance thereof, A. in the same year conveyed his other farm to C., taking a like mortgage from her. During A.'s lifetime neither B. nor C. made any complaint, but after A.'s death in 1876, C. claimed that there had been a mistake in the settlement, and on the filing of the account of A.'s administrators claimed a certain sum to equalize the advancements. *Held*, that

the testimony clearly proved that the settlement was completed and the advancements equalized in accordance therewith, and that there was no such evidence of mistake as would justify the re-opening of the settlement for the purpose of correcting alleged errors therein.

2. The credit claimed by the accountants for certain costs incurred by C. in endeavoring to perpetuate testimony in support of her claim, disallowed.

3. The counsel fees in the above case were diminished in view of the circumstances, and in view of the fact that a considerable portion of the professional services were for the benefit of C., and not for the benefit of the estate.

4. A certain claim of the estate held not to be lost by any negligence of the administrators.

March 3d 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

APPEAL from the Orphans' Court of *Berks county:* Of January Term 1881, No. 11.

Appeal of Jacob Reeser and Ellen his wife, in her right, from a decree of said court, dismissing her exceptions to the report of the auditor appointed to audit and restate the account of George C. Hartman, administrator of Daniel Hartman, and confirming the said report. The facts are stated in the opinion of this court.

The said exceptions were as follows:

1. The auditor erred in allowing the accountant a credit of $67.57 as costs and expenses of perpetuating testimony in his claim against the estate by bill in equity.

2. In allowing the counsel fees and compensation—the latter being excessive and the former being largely incurred in prosecuting the accountant's own claim against the estate.

3. In allowing the accountant a credit of $481.61, being a deposit in the Reading Savings Bank, which was lost by the negligence of the accountant.

After argument the court dismissed the exceptions, in the following opinion by SASSAMAN, J.:

" Upon an examination of this auditor's report we find that all his conclusions of law, to which there are exceptions, involved the finding of facts. If the conclusions of fact obtained by the auditor are correct, we see no reason to interfere with his application of the law. Should we be asked to interfere with the auditor's work in matters of fact? We do not think so, so long as there were facts before him to sustain his conclusions. If there were gross errors in this respect, we feel that it would be our duty to reverse and open his findings, for reasons that would seem sufficient for us to set aside a verdict. In this case we discover no such reasons, and hence consider the findings conclusive. . .

[Reeser's Appeal.]

"The exceptions are dismissed and the auditor's report is confirmed absolutely."

Jacob Reeser and Ellen his wife thereupon took this appeal and filed the following assignments of error.

1. The court erred in dismissing the exceptions filed by the appellants, and in confirming the auditor's report.

2. In not striking from the administrator's account the credit of $67.67, being the costs incurred by George C. Hartman in perpetuating the testimony of witness by bill in equity, in his claim against the estate.

3. In allowing the accountant $600 commission and $250 for fees paid to his counsel.

4. In allowing the accountant a credit of $419.58 lost by the insolvency of the Reading Savings Bank, over eighteen months after letters of administration had been taken out.

5. In finding that Ellen Reeser was advanced $4,500 by the decedent, and that George C. Hartman was intended to be equally advanced, but had only received on said intended advancement $2,000, leaving still due him out of the estate $2,500 on account thereof, and allowing interest thereon.

6. In finding that the indebtedness of Ellen Reeser to her father's estate is $13,577.75 ; that she is only entitled thereon to a credit by way of distribution of $11,506.56, and that she is indebted to the estate, that is, to George C. Hartman, the difference of $2,071.18.

*A. G. Green*, for the appellants.

*Daniel* and *James N. Ermentrout*, for the appellees.

Mr. Justice STERRETT delivered the opinion of the court, October 2d 1882.

The intestate Daniel Hartman had two farms of about equal size and value, one of which he conveyed in 1867 to his son George, the appellee, and took from him a mortgage thereon for $12,000. On October 17th 1874 he conveyed the other to his daughter Ellen Reeser, one of the appellants, taking her mortgage for the same sum. The difference, which was very considerable, between the actual value of each farm and the mortgage given thereon, was regarded as an advancement to each of his children respectively. The mortgages, with an equal amount of interest due on each, were held by him at the time of his decease in the Spring of 1876. Prior to the conveyance to his daughter in 1874 the father and son had unsettled business transactions, which the former was anxious to have adjusted, with the view of equalizing advancements to his two children.

4 OUTERBRIDGE.—6

For this purpose they met at the office of Judge Stitzel, by whom a statement of their respective claims and accounts was prepared, and a settlement was there agreed upon, which was afterwards carried into effect, at or before the time of the last mentioned conveyance.   In accordance with that settlement, Mr. Hartman equalized, as he supposed, the advancements made to his children.   During his lifetime neither of them appears to have made any complaint; but, after his decease, the appellee contended there was a mistake in the settlement, and in order to equalize the advancements, as his father intended, he should receive the further sum of $2,500.   He succeeded in satisfying the auditor that such was the fact, and in the distribution he was accordingly credited with that sum and interest thereon from his father's death.   As the result of this the auditor found that appellant was indebted to her father's estate in the sum of $2,071.18, with interest from January 25th 1879, upon the payment of which, she would be "entitled to have her mortgage marked satisfied," etc.   From the decree confirming the auditor's report this appeal was taken.

The main question thus presented by the record is, whether there was anything to justify the court in reopening the settlement, or in crediting the appellee with $2,500 and interest thereon, in order to make his advancement equal to that of his sister.   From a careful examination of the testimony we are satisfied there was not.   On the contrary, the weight of the evidence is very decidedly in favor of the accuracy of the statement as originally made and on the basis of which the advancements were equalized by the intestate as he intended they should be.   In testifying to what occurred in his presence, Judge Stitzel says, "The old man had already explained that he deeded the Harris farm to George, and mentioned the consideration ; then we went to work to make a calculation to see how the matter stood between these respective parties—between the old man, George and Ellen; Ellen was already recognized as a party to this; she was spoken of as having the lower farm. We arrived at balances from a general settlement between George and the old man, into which borrowed money and interest, and I think—I won't be quite positive about that—rents entered. The balances, whilst the calculation was going on, were always submitted to the parties, and were fully concurred in by all present before they separated.   Some of these parties did not understand some of the statements until I explained them.   When I speak of parties I mean all that were present in that room. They fully acquiesced in the settlement and the balances upon which the papers were to be drawn at some future time." He further testified in substance that the papers were afterward submitted to him for approval; the conveyance was made to

Mrs. Reeser and the mortgage was given by her; that he retained a statement of the calculation made by him until the transactions were finally consummated, and then it was thrown in the waste basket; that he had made diligent search for it, but was unable to find it; and in the absence of that paper he was unable to give the exact amounts of the items embraced in the settlement. While the testimony clearly proves that the settlement was completed and the advancements equalized in accordance therewith, there is no such evidence of mistake as would justify the action of the court below in re-opening the settlement for the purpose of correcting alleged errors therein. The fifth and sixth assignments of error are sustained.

The second specification is also sustained. The costs therein mentioned were incurred by the appellee in endeavoring to perpetuate, by bill in equity, the testimony of witnesses in support of his claim against the estate, which, as we have already seen, was not well founded. The credit claimed, therefore, in his account should have been stricken out.

The subject of complaint in the next assignment is the claim for commissions and counsel fees. As to the former, we are clearly of opinion that $600 is an excessive allowance. While the mortgages of $12,000 each, which were given by appellant and his sister respectively, may be regarded as assets of the estate, they were not to be collected, and no claim for commissions can justly be based thereon. Leaving out of view these mortgages and other items of advancement included in the inventory, the estate does not exceed $2,000. For all the trouble and expenses, necessarily incident to the administration of this, we think $200 is quite sufficient, and the claim is therefore reduced to that sum. We have no doubt the allowance of $375 for counsel fees was fully earned by the learned counsel to whom it was paid; but, at the same time, it is very evident that a considerable portion of the services rendered were for the personal benefit of the appellee and not in the interest of the estate. The third specification is therefore sustained to the extent of disallowing $400 of the amount claimed for commissions and $150 of the amount paid for counsel fees.

The auditor rightly found that the claim against the Reading Savings Bank was not lost by reason of any negligence of the administrator. The fourth specification is therefore not sustained.

There is no exception to the allowance of $415.82, and $71.04, interest thereon, to the appellee, in the distribution; but, it is admitted by appellee's counsel that in this there is an error of $38.25 in his favor. This should be added to the other items in ascertaining the correct balance for distribution.

Making the foregoing corrections, the net balance for dis-

tribution, instead of $23,013.13 as found by the auditor, will be $26,588.63, or $13,294.31 to each of the distributees. The auditor finds that appellant is chargeable with cash received, principal and interest of her bond and due-bill, amounting in all to $13,577.75, or $283.04 more than her distributive share.

> Decree reversed at the costs of the appellee, and record remitted to the Orphans' Court, with instructions to enter a decree in accordance with the foregoing opinion.